Marvin Randall, Pro Se
#23509566
TRCI
82911 Beach Access Rd
Umatilla, OR 97882

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARVIN RANDALL, | Case No. ___2:24-cv-02171-SB___ |
| Plaintiff | |
| v. | |
| STATE OF OREGON; | **PLAINTIFF'S COMPLAINT AND DEMAND FOR DAMAGES (VIOLATION OF PRISON RAPE ELIMINATION ACT, DELIBERATE INDIFFERENCE, FAILURE TO SUPERVISE, NEGLIGENCE, DISCRIMINATION, CRUEL AND UNUSUSAL PUNISHMENT, VIOLATION OF DUE PROCESS, UNNECESSARY RIGOR, RETALIATION, DISCRIMINATION, CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)** |
| OREGON DEPARTMENT OF CORRECTIONS, a state agency; | |
| CYNTHIA DIETER aka CINDY DIETER, both in her official capacity and as an Individual; | |
| WARREN ROBERTS, both in his official capacity and as an Individual; | |
| DOES 1-99, both in their official capacity and as Individuals; | **42 U.S.C. §1983** |
| Defendants | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR DAMAGES

### I. JURISDICTION

1. This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1334(a)(3).

## II. VENUE

2. The District of Oregon is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PARTIES

3. Plaintiff is an Adult in Custody ("AIC") at Two Rivers Correction Institution ("TRCI"), located at 82911 Beach Access Road Umatilla, Oregon 97882.

4. Defendant State of Oregon is responsible for the creation and existence of the Oregon Department of Corrections, TRCI, and the employer of all other named defendants.

5. Defendant Oregon Department of Corrections ("ODOC") is a state agency and is responsible for day to day operation of TRCI.

6. Defendant Cynthia Dieter aka Cindy Dieter ("Dieter") is a Nurse Manager, employed by the Defendant ODOC at TRCI and is sued in both her individual and official capacities.

7. Defendant Warren Roberts ("Roberts") is the Medical Director for Defendant ODOC and is sued in both his individual and official capacities. Defendant Roberts does not hold a valid medical license in any US state or territory.

8. Defendant DOES 1-99 are unknown persons at the time of filing. Plaintiff seeks leave of the court to amend the complaint once their identities are discovered.

## FACTUAL ALLEGATIONS

9. While in custody at TRCI, Plaintiff has been subjected to unwanted daily appointments for the purposes of screening for "latent" tuberculosis ("TB"). ODOC's primary screening tool is a skin injection test called a PPD Test (Purified Protein Derivative). The daily unwanted appointments resulted from Plaintiff's refusal to allow ODOC Health Services to inject him with anything based on his religious beliefs.

10. As a result, Plaintiff is required to go to Health Services on a daily basis in order to be questioned regarding symptoms, allow a nurse listen to his lungs, and to sit under "observation" for up to one (1) hour. This is the current scheme when an AIC refuses the PPD test.

11. For an AIC who refuses the PPD test, the ODOC screening scheme is not evidence-based medicine, does not meet US Centers for Disease Control standard of care, and has no medical significance. The ODOC Health Services screening scheme does nothing to reduce the risk of spreading TB to other AICs, as the Plaintiff is breathing the same air and is allowed to mix with the population, and would be allowed to do so if he tested positive to latent TB.

12. If anything, the Plaintiff is subjected to a higher risk of being exposed to transmissible diseases other than TB, including the common cold, influenza, RSV, COVID-19, MRSA and other transmissible diseases because he is required to go to Health Services on a daily basis for up to one (1) hour. The common cold, influenza, RSV, COVID-19 and MRSA are far more transmissible and hazardous than latent TB.

13. The Defendants may maintain an interest in preventing the spread of TB, but the Plaintiff also has an interest in avoiding compulsory daily exposure of transmissible diseases.

14. The Plaintiff also has a right to be free of retaliatory actions after reporting sexual harassment.

15. The requirement for Plaintiff to go to Health Services on a daily basis is mandatory. Failure to go to this daily appointment will result in removal to the Disciplinary and Segregation Unit where he is held in complete isolation, subjected to loss of privileges and imposition of financial penalties. As such, this requirement to report to Health Services on a daily basis

creates a structurally coercive clinical atmosphere.

16. The structurally coercive clinical atmosphere subjects the Plaintiff to the arbitrary and unprofessional behavior of ODOC Health Services staff and is used as a de facto punishment for his refusal to participate in testing. This punishment is further exacerbated by the fact that he reported sexual harassment conducted by a nurse (Jupic) who was later terminated for that sexual harassment.

17. An AIC who allows Health Services to inject him/her as part of the TB testing scheme is not subjected to the ODOC Latent TB Screening scheme.

18. No such follow up or scrutiny exists for those AICs who refuse other medical testing or appointments such as physical examinations, laboratory testing, flu shots, dental examinations, vaccinations or any other procedures which ODOC offers.

19. The latent TB screening scheme can be conducted by any member of the TRCI nurses present in Health Services, including contract nurse and non-defendant Danira Jupic.

20. Jupic was a nurse present in Health Services at the relevant times to this case.

21. On July 10, July 11, July 18 and July 23, 2023, Jupic sexually harassed Plaintiff by standing in a close, uncomfortable and unprofessional manner without consent of the Plaintiff.

22. This behavior occurred in the Health Services waiting area located at TRCI. All of the incidents occurred between 7:30 and 7:45 AM.

23. On the abovementioned dates, Jupic stood within several inches of the Plaintiff while he was seated in the TRCI Health Services waiting area in an effort to coerce and examination of him against his will.

24. In positioning herself in the manner described, she blocked and impeded him from being able to remove himself from her presence.

25. Plaintiff refused consent to allow her to examine him based on her unprofessional behavior. Plaintiff felt extremely uncomfortable in her presence.

26. The incident perpetrated by Jupic on July 23, 2023 was especially grievous.

27. On July 23, both Plaintiff and Jupic was present in Health Services. Also present that day were a number of other nurses in Health Services.

28. Prior to approaching the Plaintiff, Jupic sent the other nurses out for coffee, informing them that "I've got this." This was a reference to the Plaintiff who was present in the Health Services waiting area.

29. The departure of the nurses was captured on TRCI video surveillance cameras. Their departure left Jupic the only nurse remaining in Health Services.

30. Upon belief of the Plaintiff, sending the other nurses for coffee was done in an effort to avoid having witnesses present to Jupic's planned sexual harassment and to leave Jupic as the only available nurse in Health Services.

31. Once the nurses left Health Services, Jupic approached the Plaintiff at approximately 7:40AM.

32. Jupic stood uncomfortably close to the Plaintiff. She informed the Plaintiff that she was going to "Stand here until you acknowledge me."

33. Plaintiff told her to step back. He pointed in an effort to demonstrate an appropriate distance.

34. Plaintiff believes that Jupic stood in front of him for at least one (1) to two (2) minutes, but possibly longer.

35. Jupic was standing so close that if Plaintiff attempted to move away from her, he would make physical contact with her.

36. Plaintiff believes this behavior constituted sexual harassment.

37. Plaintiff never consented to allow Jupic to stand so close to him on July 10, July 11, July 18 and July 23, 2023. Her actions on these dates were not medically necessary.

38. Prior to the four incidents, Plaintiff had no interaction with Jupic.

39. The interactions on July 10, July 11, July 18 and July 23, 2023 were highly distressing.

40. On July 25, 2023, Plaintiff reported Jupic's behavior. The report was made by filing a grievance with prison officials, as there is no separate sexual harassment reporting procedure that exists in ODOC. This grievance reported Jupic's behavior that occurred on July 10, 11 and 18, 2023.

41. The July 25 grievance was filed based on Plaintiff seeing a poster titled "IS IT SEXUAL HARASSMENT?" ("Poster"), which was prominently displayed in the TRCI Health Services waiting area which highlights examples of behavior consistent with sexual harassment. Among the behaviors listed is "Blocking or Impeding."

42. A second grievance was filed on August 1, 2023 which reported the July 23 incident. The second grievance described Jupic's behavior and referred to all of her previously reported behavior occurring on July 10, 11 and 18, 2023.

43. In response to his grievances, Plaintiff was informed that a Prison Rape Elimination Act ("PREA") investigation would be conducted and as a result, the grievance process was concluded. The Prison Rape Elimination Act (34 U.S.C.A. § 30301 et seq.) was enacted to among other things, establish zero tolerance of sexual harassment of inmates by staff members and to hold staff and officials accountable for failing to prevent such harassment. Additionally, the Act was enacted to protect the Eighth Amendment rights of inmates.

44. After reporting the incidents, whenever Jupic saw the Plaintiff in Health Services, she

would subject him to threatening and menacing looks, causing further emotional distress and anxiety.

45. Plaintiff was concerned about physical attack by Jupic, by correctional officers or by other inmates acting on her request. Such an attack would be perpetrated for his reporting the sexual harassment on July 10, July 11, July 18 and July 23, 2023.

46. The possibility of physical attack by inmates or staff further exacerbated Plaintiff's emotional distress and anxiety.

47. All four of the incidents occurring on July 10, July 11, July 18 and July 23, 2023 were captured on camera in the Health Services waiting room.

48. After reporting the behavior, Plaintiff send a request to TRCI Public Records in order to secure copies of the video of the four incidents involving Jupic. The request was denied.

49. On September 10, 2023, Defendant Dieter called the Plaintiff to Health Services for a meeting. Plaintiff did not request this meeting with Defendant Dieter.

50. The meeting was very hostile. Plaintiff believes this was because of his reporting Jupic's behavior towards him in July 2023.

51. During the meeting on September 10, 2023, Plaintiff was informed that he would be required to be subjected to a visual examination, even if he refuses any other facet of the ODOC screening scheme.

52. Plaintiff believes that Defendant Dieter enacted this visual examination to humiliate and punish the Plaintiff for reporting Jupic's sexual harassment which occurred on July 10, July 11, July 18 and July 23, 2023. The visual examination continues to the present and Plaintiff feels like a "piece of meat" each time he is Health Services, further exacerbating emotional distress suffered in July 2023 because of Jupic's actions.

53. Additionally, there is no way to identify the presence of latent TB based on a visual examination. Thus, there is no medical significance with respect to a visual examination and is only in place to humiliate and punish the Plaintiff for reporting Jupic's sexual harassment.

54. Also present at the meeting on September 10, 2023 was an unidentified correctional officer. Upon information and belief of the Plaintiff, the officer was present in an effort to intimidate him.

55. During and after the meeting on September 10, 2023, the Plaintiff was fearful of retaliation and physical attack by Health Services staff and/or correctional officers acting on behalf of Health Services staff members. That fear remains to the present.

56. On September 22, 2023, Plaintiff was called to Health Services for his daily unwanted medical appointment. Upon arrival, three (3) nurses attempted to corral the Plaintiff into an examination room which was not subject to visibility of TRCI cameras. Plaintiff believed this was a "set up"- an attempt to get him away from the view of cameras in order to physically harm him or to make a false allegation of a staff assault.

57. Such allegations would result in new criminal charges against the Plaintiff.

58. Plaintiff, aware of a potential set up, refused to go to any place where there was no camera coverage.

59. Upon information and belief, Defendant Dieter had prior knowledge of the September 22 incident.

60. After the September 22 incident in Health Services, Plaintiff wrote a letter to Defendant Roberts, the Medical Director of ODOC Health Services. In that letter, Plaintiff recounted his experience with both Jupic and Defendant Dieter and sought a waiver from being

subjected to the ODOC Latent TB screening scheme.

61. As Medical Director, Defendant Roberts has the authority to waive the Plaintiff's need to go to Health Services on a daily basis.

62. Defendant Roberts refused to waive the requirement that he be called to Health Services on a daily basis.

63. In his reply letter, Defendant Roberts conveyed that the daily screening was medically necessary.

64. Defendant Roberts has never conducted an examination of the Plaintiff.

65. Defendant Roberts' assertion that screening is medically necessary is negligent and not based on the Plaintiff's specific medical needs as he failed to conduct an examination or any other medical screening of Plaintiff.

66. Such blanket statements regarding Plaintiff's medical needs would amount to medical malpractice if he were a licensed physician.

67. On October 4, 2023, Plaintiff was called to the TRCI Security Office. He met with Lt. Zumwalt, the TRCI PREA Investigator.

68. At the conclusion of the meeting, Plaintiff informed Zumwalt that he was certain that Defendant Dieter was going to retaliate against him for reporting Jupic's behavior.

69. Jupic's assignment at TRCI was terminated on October 4, 2023 based on the results of Zumwalt's investigation of the Plaintiff's allegations.

70. The following day, October 5, 2023, Plaintiff's appointment time was changed to 2:30PM.

71. This change interferes with Plaintiff's afternoon recreation time. Recreation time is the only time plaintiff is permitted to be outside his cell in order to access direct sunlight, exercise, fresh air, showers and phone calls.

72. Prior to October 5, 2023, his appointment time was at 7:30AM which did not interfere with Plaintiff's recreation time.

73. Plaintiff was not subject to any disciplinary or administrative sanctions imposed by ODOC which would have restricted his access to recreation time on October 4, 2023.

74. The change was in direct response to Jupic's termination the previous day, October 4, 2023.

75. Access direct sunlight, exercise, fresh air, showers and phone calls are constitutionally protected rights.

76. The change to the appointment time was conducted by Defendant Dieter in order to retaliate against Plaintiff and unlawfully punish him for both reporting Jupic's sexual harassment and Jupic's subsequent termination on October 4, 2023. The action also constitutes retaliation as the change to Plaintiff's appointment time occurred the day after Jupic's assignment was terminated.

77. Upon information and belief, Defendant Roberts had knowledge of the actions undertaken by Defendant Dieter after becoming aware of the PREA investigation.

78. The change initiated by Dieter constitutes discrimination. This is based on a poster in the TRCI Health Services waiting area titled "IS IT DISCRIMINATION?" which provides examples of behaviors that are evidence of discrimination. Among those behaviors is retaliation and/or retribution and the blocking of the use of ODOC facilities.

79. Subsequent efforts to get Plaintiff's appointment time changed in order to be allowed access to direct sunlight, exercise, fresh air, showers and phone calls have all been denied by Defendant Dieter.

80. Upon information and belief of Plaintiff, other AICs who are subject to the ODOC Latent

TB Screening Scheme have their daily appointments scheduled which do not interfere with their recreation time. The appointments all occur at 7:30AM.

81. Only Plaintiff's appointment time was changed.

82. The other AICs who are subject to the ODOC Latent TB Screening Scheme continue to have their appointments scheduled at 7:30AM as of the filing date.

83. Between November 8 and November 16, 2023, all copies of the "IS IT SEXUAL HARASSMENT" poster were removed from the Health Services waiting area.

84. Plaintiff later inquired of the TRCI Public Records office inquiring about the Poster and the individual who authorized their removal.

85. In response to the Plaintiff's inquiry regarding the "IS IT SEXUAL HARASSMENT" poster's removal, Public Records replied that as far as they knew, the posters were still being displayed.

86. As of the date of this filing, the "IS IT SEXUAL HARASSMENT" poster has never been replaced in Health Services.

87. Upon information and belief, Defendant Dieter and Roberts removed the "IS IT SEXUAL HARASSMENT" posters based on Plaintiff's reporting of sexual harassment suffered on July 10, July 11, July 18 and July 23, 2023.

88. Plaintiff was informed that his scheduled appointment time was changed due to "staffing issues."

89. Upon information and belief, there was a net gain of nurses present on October 5, 2023.

90. The "staffing issues" eluded to by Defendant Dieter were an attempt to unpair the appointment time change to Jupic's termination on October 4, 2023.

91. On February 21, 2024, Plaintiff was transferred to Deer Ridge Correctional Institute

("DRCI").

92. While at DRCI, Plaintiff was ordered to go to Health Services as part of Defendant ODOC's Latent TB screening scheme.

93. At DRCI, the Plaintiff was ordered to report to DRCI Health Services at 6:00AM each morning and ordered to sit for one (1) hour.

94. The same coercive clinical atmosphere exists at DRCI. Failure to report to Health Services at DRCI would subject Plaintiff to placement in the Disciplinary and Segregation Unit, loss of privileges and monetary sanctions.

95. As a result of being at Health Services, Plaintiff missed breakfast which occurs between 6:15AM and 6:45AM daily.

96. DRCI Health Services punished Plaintiff by scheduling him to miss his breakfast on a daily basis. This occurred 100% of the time while at DRCI.

97. Denying or restricting access to food is a violation of Plaintiff's constitutional rights.

98. Upon information and belief, Defendants Dieter and Roberts were instrumental in having the Plaintiff transferred to DRCI in order to punish and retaliate against him for reporting Jupic's sexual harassment and his subsequent complaints regarding the loss of his recreation time while at TRCI.

99. In July 2023, Plaintiff became aware through media reporting of extensive sexual harassment of female AICs conducted by a nurse formerly employed at Coffee Creek Correctional Facility ("CCCF") in Wilsonville, Oregon. According to those media reports, over a dozen female AICs experienced sexual harassment, and upon reporting the harassment, were subjected to retaliation by ODOC staff members and employees for reporting sexual harassment. Those consequences included threats by staff, loss of

employment, loss of visiting privileges and other punishments.

100.    The media reports state that the retaliation suffered by the female AICs constituted "standard operating procedure" of Defendant ODOC, its staff members and employees when AICs report sexual harassment conducted by ODOC staff members and employees.

101.    The retaliation suffered by the female AICs is substantially similar to the Plaintiff's experience at TRCI and DRCI when reporting sexual harassment.

102.    Regardless of which institution he is sent while in custody of Defendant ODOC, Health Services will continue subjecting Plaintiff to its Latent TB screening scheme.

103.    Based on Plaintiff's experience at both TRCI and DRCI, Health Services will use the screening scheme to punish him for reporting Jupic's sexual harassment while he remains in custody.

104.    Non-management level nursing staff are allowed to waive the daily TB screening appointments. On September 13, 2024, an unidentified nurse at TRCI directed the Plaintiff to return to his cell after showing up for his appointment. He was not screened that day and did not sit for his observation period. This demonstrates that there is the ability to waive the requirement for daily appointment if a non-management level nurse can do so.

105.    As of the filing of this complaint, the Plaintiff is still subjected to daily appointments at Health Services every afternoon at 2:30PM. Such appointments continue to cause Plaintiff's loss of constitutionally protected access to direct sunlight, exercise, fresh air, showers and phone calls – all of which constitute a punishment for reporting sexual harassment conducted by Danira Jupic.

106.    Policy is used by Defendant's to conceal their retaliatory actions.

## CLAIM 1

## VIOLATION OF THE PRISON RAPE ELIMINATION ACT (34 USCA § 30302)

107.      While under the supervision of Defendants Dieter and Roberts, contract nurse
Danira Jupic violated the Prison Rape Elimination Act (34 USCA § 30301 et seq) on July
10, July 11, July 18 and July 23, 2023 by conducting herself in a manner that constituted
sexual harassment.

108.      Defendants ODOC, Dieter and Roberts' actions violated the Prison Rape
Elimination Act by failing to take prompt action once learning of Jupic's actions.

109.      Between the July 25 grievance of Jupic's behavior and interview of the Plaintiff by
Zumwalt, approximately 72 days elapsed before any action was taken by Defendant
ODOC.

110.      Defendants ODOC, Dieter and Roberts continue to violate PREA by forcing him to
go to Health Services on a daily basis under threat of punishment.

111.      Slow investigation response undertaken by Defendants Dieter, Roberts and ODOC
is an attempt to avoid accountability under the Prison Rape Elimination Act.

112.      Removal of the "IS IT SEXUAL HARASSMENT" posters between November 8
and November 16, 2023 violates PREA. Its removal is an attempt to preempt the future
reporting of violations of PREA.

## CLAIM 2

## DEFENDANT'S DELIBERATE INDIFFERENCE

113.      Defendant ODOC failed to conduct a timely investigation which resulted in
infliction of suffering by the Plaintiff.

114.      After receiving reports of Jupic's sexual harassment, Defendants ODOC, Dieter and

Roberts made no effort to prevent the Plaintiff from being in continuing contact with Jupic.

115.    Such lack of action reflects deliberate indifference to Jupic's behavior on the part of Defendants ODOC, Dieter and Roberts.

116.    Defendant Roberts was deliberately indifferent once he was informed of the Plaintiff's experiences via letter in September 2023 and refused to waive the Latent TB Screening.

117.    Behavior on part of Defendants ODOC, Dieter and Roberts are part of a pattern to conceal sexual harassment claims.

118.    Defendants ODOC, Dieter and Roberts continue to remain indifferent because he is still required to present himself to Health Services on a daily basis under threat of punishment by Defendant ODOC through the use of its correctional officers, placement in the Disciplinary and Segregation Unit, arbitrary loss of privileges and possible monetary fines.

119.    The deliberate indifference on the part of Defendants ODOC, Dieter and Roberts violates the Plaintiff's 8th Amendment rights.

### CLAIM 3

### FAILURE TO SUPERVISE

120.    Defendant Dieter failed to supervise Jupic by failing to provide training on preventing sexual harassment.

121.    Defendant Dieter failed to supervise Jupic by failing to provide training on the Prison Rape Elimination Act.

122.    Defendant Dieter failed to supervise Jupic by allowing her to conduct herself in an unprofessional manner.

123.     Defendant Roberts failed to supervise Defendant Dieter by refusing to waive the
requirement that Plaintiff be subjected to daily appointments to Health Services once
informed of the Plaintiff's experiences.

## CLAIM 4

## STATE LAW NEGLIGENCE

124.     Defendant Dieter was negligent for failure to protect the Plaintiff from Jupic's
sexual harassment.

125.     Defendant Dieter was negligent for failure to supervise Jupic by advising her what
would be inappropriate behavior, including information regarding the prevention of sexual
harassment and PREA.

126.     Defendant Roberts was negligent in failing to protect the Plaintiff from both Jupic
and Defendant Dieter's behavior once he was informed of the Plaintiff's experience via
letter in September 2023.

127.     Defendant Roberts was negligent in failing to protect the Plaintiff by granting a
waiver to the ODOC Latent TB screening scheme.

128.     Defendants Dieter and Roberts continue to exhibit negligence by forcing the
Plaintiff to report to Health Services on a daily basis despite knowledge of past experiences
with TRCI Health Services staff.

129.     Defendant ODOC was negligent in waiting approximately 64 days before
commencing an investigation and/or interviewing the Plaintiff regarding the Plaintiff's
sexual harassment experienced on the part of Jupic.

130.     Removal of the "IS IT SEXUAL HARASSMENT?" Poster between November 8
and November 16, 2023 is an attempt by Defendants ODOC, Dieter and Roberts to

disguise, obfuscate and cover up their negligence with respect to Jupic's sexual harassment.

## CLAIM 5

### STATE LAW CRUEL AND UNUSUAL PUNISHMENT

131.    Retaliatory actions undertaken by Defendants ODOC, Dieter and Roberts constitute cruel and unusual punishment in violation of Oregon constitution Art 1 Sec 16.

132.    Defendant Dieter inflicted cruel and unusual punishment on plaintiff by allowing him to be harassed violating Oregon constitution Art 1 Sec 16.

133.    Defendant Dieter continues to inflict cruel and unusual punishment on Plaintiff by taking steps to prevent his access to direct sunlight, exercise, fresh air, showers and phone calls. This is a de facto punishment as it reduces his rights-beginning on October 5, 2023 and continuing to the present.

134.    Forcing Plaintiff to be present on a daily basis causes severe distress as he is being forced to interact with the very individuals who are assisting Defendant Dieter with punishing him for reporting Jupic's sexual harassment in July 2023.

135.    Defendant ODOC inflicted cruel and unusual punishment on Plaintiff by scheduling his daily Health Services appointment times to miss 100% of his breakfasts while at DRCI.

136.    Forcing the Plaintiff to regularly be exposed to transmissible diseases on a daily basis constitutes state law cruel and unusual punishment.

137.    The significant power imbalance that exists as an AIC in the custody of Defendants ODOC, Dieter and Roberts constitutes cruel and unusual punishment in violation of Art 1, Sec 16 of the Oregon Constitution.

138.    The state law violations also constitute violations of the Eighth Amendment to the

US Constitution.

## CLAIM 6

### CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT

139.     Retaliatory actions undertaken by Defendants ODOC, Dieter and Roberts constitute cruel and unusual punishment in violation of the Eighth Amendment to the US Constitution.

140.     Forcing the Plaintiff to regularly be exposed to transmissible diseases on a daily basis by sitting in Health Services for up to one (1) hour per day constitutes cruel and unusual punishment under the Eighth Amendment to the US Constitution.

141.     Loss of access to direct sunlight, exercise, fresh air, showers and phone calls constitutes an ongoing violation of the Eighth Amendment to the US Constitution.

142.     Forcing Plaintiff to interact with nurses at ODOC facilities after suffering from Jupic's sexual harassment constitutes cruel and unusual punishment in violation of the Eighth Amendment to the US Constitution.

143.     Defendant ODOC inflicted cruel and unusual punishment on Plaintiff by scheduling his daily Health Services appointment times to miss 100% of his breakfasts while at DRCI.

## CLAIM 7

### VIOLATION OF DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT

144.     The action taken by Defendants Dieter and Roberts which results in his ongoing loss of access to direct sunlight, exercise, fresh air, showers and phone calls violated the

Plaintiff's due process right under the Fourteenth Amendment to the US Constitution. The right to access to direct sunlight, exercise, fresh air, showers and phone calls are constitutionally protected rights.

145.     Defendants lack a mechanism to seek redress to issues raised in this complaint.

146.     The Due Process violations also constitute violations of the Eighth Amendment to the US Constitution.

## CLAIM 8

### UNNECESSARY RIGOR UNDER STATE LAW

147.     Daily appointments to Health Services constitute unnecessary rigor, especially given the harassment and hostility experienced by the Plaintiff.

148.     The right to access to direct sunlight, exercise, fresh air, showers and phone calls are constitutionally protected rights. These constitutionally protected rights were restricted without a hearing by Defendants Dieter and Roberts.

149.     Defendants, ODOC, Dieter and Roberts acted in a manner that restricted the Plaintiff's access to direct sunlight, exercise, fresh air, showers and phone calls, subjecting the Plaintiff to unnecessary rigor in violation of Article I, Section 13 of the Oregon Constitution.

150.     Defendant ODOC subjected Plaintiff to undue rigor by scheduling his daily Health Services appointment times to miss 100% of his breakfasts while at DRCI.

151.     Daily exposure to transmissible diseases such as common cold, influenza, RSV, MRSA and COVID 19 constitute undue rigor under state law.

152.     The significant power imbalance that exists as an AIC in the custody of Defendants ODOC, Dieter and Roberts creates unnecessary rigor upon the Plaintiff in violation of

Article I, Section 13 of the Oregon Constitution.

## CLAIM 9

### RETALIATION

153.    Upon information and belief of the Plaintiff, Dieter's actions after July 2023 were undertaken in an effort to retaliate against him for reporting Jupic's behavior and her subsequent termination.

154.    Defendant Dieter's change to the Plaintiff's appointment time on October 5, 2023 which restricted Plaintiff's right to access direct sunlight, exercise, fresh air, showers and phone calls were done the day after Defendant Jupic's termination as retaliation for reporting sexual harassment.

155.    Upon information and belief of the Plaintiff, Defendant ODOC and its staff have a history of taking retaliatory actions against AICs who report sexual harassment conducted by ODOC staff.

156.    Upon information and belief of the Plaintiff, Defendants condone and encourage retaliatory actions taken by staff against AICs who report sexual harassment.

157.    Removal of Poster between November 8 and November 16, 2023 demonstrates retaliation on the parts of Defendants ODOC, Dieter and Roberts. Defendants removed the Poster to retaliate against the Plaintiff as he based his reporting of Jupic's sexual harassment based on the language contained on the Poster.

## CLAIM 10

### DISCRMINATION

158.    Defendants ODOC, Dieter and Roberts engaged in systematic discrimination for the Plaintiff's refusal to allow PPD testing and refusal to participate in the Latent TB

screening scheme.

159.    Defendant Dieter's changing of the Plaintiff's appointment time from 7:30AM to
2:30PM is discrimination based on Dieter's retaliatory action taken on October 5, 2023.
This is based on the ODOC poster present in the TRCI Health Services waiting area titled
"IS IT DICRIMNATION?"

160.    Defendant Dieter's changing of the Plaintiff's appointment time on October 5, 2023
from 7:30AM to 2:30PM is discrimination based on Dieter's interfering with Plaintiff's
access to ODOC facilities – namely his access to recreation time, which is a constitutionally
protected right.

## CLAIM 11

## CONSPIRACY

161.    Defendants Dieter and Roberts acted as part of a conspiracy to deprive Plaintiff of
his rights and take retaliatory action in violation of numerous state and Federal laws
including the Prison Rape Elimination Act. This conspiracy also involves unknown ODOC
employees, successors, agents, and others acting in concert to retaliate or to
unconstitutionally punish the Plaintiff for reporting Jupic's sexual harassment.

162.    The September 22, 2023 incident with the three nurses constituted a conspiracy
retaliate for the reporting of Jupic's behavior and the investigation which was in progress
at the time.

163.    Defendants Dieter and Roberts removed the "IS IT SEXUAL HARASSMENT"
poster between November 8 and November 16, 2023 as part of a conspiracy to prevent
future reporting of sexual harassment.

## CLAIM 12

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

164.    The sexual harassment perpetrated by Jupic on July 10, July 11, July 18 and July 23, 2023 inflicted significant emotional distress upon the Plaintiff due to the coercive clinical atmosphere operated by Defendants ODOC, Dieter and Roberts.

165.    The hostility by Defendant Dieter experienced by the Plaintiff in September 2023 for reporting Jupic's sexual harassment inflicted significant emotional distress upon the Plaintiff.

166.    The deliberate indifference on the part of Defendant Roberts inflicted significant emotional distress upon the Plaintiff.

167.    The deliberate indifference on the part of Defendant ODOC has inflicted significant emotional distress upon the Plaintiff.

168.    Plaintiff does not feel comfortable being forced to report to Health Services on a daily basis based on the actions undertaken by Jupic, Defendants Dieter and Roberts. Plaintiff continues to suffer as a result of Defendants' combined retaliatory actions.

169.    Plaintiff does not feel comfortable being forced to report to Health Services on a daily basis based on the actions undertaken by Jupic, Defendants Dieter and Roberts. Plaintiff is fearful of continuing retaliation on the part of other nurses and/or Defendants Dieter, Roberts and ODOC.

170.    The significant power imbalance that exists as an AIC in the custody of Defendants ODOC, Dieter and Roberts creates a hostile and toxic environment that is emotionally distressing to the Plaintiff.

171.    Plaintiff continues to suffer distress and will continue to suffer distress for the

duration of his life.

## Exhaustion

172.    Plaintiff has exhausted all available administrative remedies regarding the matters
described in this complaint. On July 18, 2023 and on July 23,2023, the Plaintiff filed two
grievances asking for termination of Jupic's employment and to stop the daily medical
appointments to screen for latent TB. This grievance process was deemed concluded on
August 18, 2023 and the second was deemed concluded on August 28th, 2023. At that point
under the Prison Litigation Reform Act, the grievance process was concluded on these
matters.

## VI. PRAYER FOR RELIEF

WHERERFORE, Plaintiff respectfully prays that this Court grant the following:

1. Declaratory judgment that the acts and omissions described herein violated Plaintiff's
   rights under the Constitution and laws of the United States;

2. Declaratory judgment that Defendants and Danira Jupic violated the Prison Rape
   Elimination Act and engaged in retaliatory actions for reporting sexual harassment;

3. Enter preliminary and permanent injunctions ordering Defendants ODOC, Dieter and
   Roberts, their successors, agents, employees, and all persons acting in concert with
   them from subjecting Plaintiff to daily appointments to screen for latent TB;

4. Compensatory damages of $1,000,000 against each Defendant jointly and severally;

5. Punitive damages in the amount of $3,000,000.00 as allowed by law, against each
   Defendant, jointly and severally;

6. Costs and fees;

7. Order such additional relief as this Court may deem just and proper.

Dated this 30th day of December, 2024.

Marvin Randall, Pro Se

# CERTIFICATE OF SERVICE

CASE NAME: _____Randall_____ v. ___State of Oregon_____

CASE NUMBER: (if known) _____

COMES NOW, __Marvin Randall_____, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution. (TRCI)

That on the _30th_ day of _____December_____, 20_24_, I personally gave Two Rivers Correctional Institution's e-filing service a true copy OF THE FOLLOWING:

| | |
|---|---|
| **1.** | Complaint |
| **2.** | Pauperis Application |
| **3.** | Cover Sheet |
| **4.** | Certified Account Statement |
| **5.** | |
| **6.** | |
| **7.** | |
| **8.** | |
| **9.** | |

_____
(Signature)

Print Name: ___Marvin Randall_____

SID #: ___2350966_____