IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARVIN RANDALL,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF OREGON *et al.*,<br><br>    Defendants. | Case No. 2:24-cv-02171-SB<br><br>**FINDINGS AND RECOMMENDATION** |

**BECKERMAN, Magistrate Judge.**

On December 31, 2024, Plaintiff Marvin Randall ("Randall"), a self-represented litigant then in custody at Two Rivers Correctional Institution ("TRCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging federal and state law claims arising out of several incidents of alleged sexual harassment he experienced while undergoing tuberculosis ("TB") screening at TRCI. (Compl., ECF No. 2.) Now before the Court are Randall's motions for a temporary restraining order ("TRO") and preliminary injunction. (ECF Nos. 10, 40.) For the reasons discussed below, the Court recommends that the district judge deny Randall's motions.

///

///

PAGE 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

The Oregon Department of Corrections ("ODOC") requires all adults in custody ("AIC") to undergo annual screening for TB, a highly contagious and potentially deadly disease that the Centers for Disease Control has identified as a serious health threat in correctional settings. (Decl. Cindy Dieter Supp. Resp. Mot. TRO ("Dieter Decl.") ¶¶ 5-7, ECF No. 27; Decl. Carter Brace, Ex. B ("Ex. B") at 11, ECF No. 28.) TB screening is accomplished using the purified protein directive ("PPD") test, which involves injecting tuberculin under the skin and monitoring for any reaction that would indicate TB exposure. (Dieter Decl. ¶ 8.) If an AIC declines the PPD test, he must report to Medical Services for daily thirty-minute appointments during which healthcare staff will ask about the AIC's symptoms, auscultate the AIC's lungs, and directly observe the AIC "for any signs and symptoms of active tuberculosis disease." (Ex. B at 11; Dieter Decl. ¶ 10.) If the AIC is unwilling to the submit to the alternate screening and monitoring procedures, medical staff will observe the AIC "for any potential [TB] symptoms over a daily sixty-minute period." (Dieter Decl. ¶ 11.) ODOC requires the AIC to submit to the daily monitoring procedure until he takes the PPD test or undergoes adequate alternate TB testing that may include a blood test. (*Id.* ¶ 12.)

While in ODOC custody serving a seventy-month prison term for compelling prostitution, Randall refused the annual PPD test and then refused to answer questions about his symptoms or allow health staff to auscultate his lungs. (*Id.* ¶ 13.) As a result, Randall was required to report to TRCI Medical Services for daily sixty-minute TB monitoring appointments. (*Id.* ¶ 14.) Because Randall frequently refused to go into an examination room with nursing staff, he often sat for such appointments in the TRCI Medical Services lobby. (*Id.* ¶ 15.)

///

///

PAGE 2 – FINDINGS AND RECOMMENDATION

In his operative complaint,[1] Randall alleges that the named defendants failed to prevent, investigate, or remedy several instances of sexual harassment and discrimination that allegedly occurred during his daily TB monitoring appointments. (Second Am. Compl., ECF No. 69.) Randall alleges that on four occasions in July 2023, a traveling nurse assigned to TRCI from July 10, 2023 to October 4, 2023, sexually harassed Randall during his TB monitoring appointment "by standing in a close, uncomfortable, medically unnecessary and unprofessional manner without consent[.]" (*Id.* ¶¶ 18, 29.) Randall also alleges that Defendants retaliated against him after he reported the sexual harassment by rescheduling the TB monitoring appointments to coincide with his assigned recreation and/or breakfast time. (*Id.*) Randall asserts, among other things, that Defendants' conduct constituted cruel and unusual punishment in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence under state law. (*Id.* ¶¶ 195-227, 237-253.)

On March 17, 2025, Randall filed a motion for a temporary restraining order, asking the Court to order "Defendant Cynthia Dieter [("Dieter")] and any employee of the Oregon Department of Corrections and their administrators, co-workers, personal representatives, agents, servants, insurers, successors, contractors, and assigns from subjecting him to daily medical appointments for the purposes of screening for latent TB on the grounds that continuing and immediate and irreparable injury will result to Plaintiff." (Mot. TRO at 1, ECF No. 10.) Randall argues that ODOC's in-person TB monitoring procedure is "medically insignificant[,]" requiring him to sit in the TRCI Medical Services lobby every day potentially exposes him to other communicable diseases, and the monitoring appointments are scheduled during his free time to

---

[1] Randall filed a second amended complaint on September 16, 2025, to consolidate related claims initially alleged in a separate lawsuit, *Randall v. Maxim Healthcare Srvs., Inc.*, No. 2:25-cv-00803-SB.

PAGE 3 – FINDINGS AND RECOMMENDATION

"punish" him for reporting the alleged sexual harassment. (Memo. Supp. Mot. TRO at 2-4, ECF No. 11.)

On May 20, 2025, Defendants filed a response, opposing Randall's motion on several grounds. (Resp. Pl.'s Mot. TRO at 5-10, ECF No. 26.) Among other things, Defendants argue that Randall failed to demonstrate that his First and Eighth Amendment claims are likely to succeed on the merits or establish that he would suffer irreparable harm absent preliminary relief. (*Id.*)

In early June 2025, ODOC transferred Randall to the Oregon State Penitentiary. (ECF No. 32.) Randall then moved for a preliminary injunction on July 15, 2025, noting that he was scheduled to be released from prison on July 22, 2025, and explaining that the terms of his post-prison supervision require Oregon's Board of Parole and Post Prison Supervision (the "Board") to install monitoring software on all computers and smartphones in his possession. (Mot. Prelim. Inj. at 1, ECF No. 40.) Randall argues that "having electronic devices monitored by a state agency while [he] is litigating against another state agency would be . . . unfair and . . . would violate his rights during litigation." (*Id.*) Randall believes that "there is a significant chance that [his] [legal] work will be transmitted to the Oregon Department of Justice [("ODOJ")] . . . [and] give the defense a significant advantage during the course of litigation[.]" (Decl. Marvin Randall ¶¶ 7, 9, ECF No. 41.) Randall thus asks the Court to "prevent[] the [Board] from monitoring his electronic devices . . . for duration of this case." (Mot. Prelim. Inj. at 1.)

On August 22, 2025, Defendants filed a response in opposition to Randall's request for a preliminary injunction, noting that Randall is subject to enhanced monitoring on post-prison supervision due to the nature of his crimes, which involved "traffick[ing] a minor using the internet." (Resp. Pl.'s Mot. Prelim. Inj. at 2, ECF No. 51.) Defendants further noted that Randall

PAGE 4 – FINDINGS AND RECOMMENDATION

refused to participate in a sex offender risk assessment prior to release, resulting in his classification under Oregon law as a sexual offender "who presents, or presented at the time of release, sentencing or discharge, the highest risk of reoffending and requires the widest range of notification." (*Id.* at 3, quoting OR. ADMIN. R. 255-85-20(1)(c).) Defendants argue that the Court should deny Randall's motion because "there is no nexus between the injury claimed in the Motion for Preliminary Injunction and the conduct in his underlying complaint[,]" and because Randall fails to satisfy the four-factor test for a preliminary injunction. (*Id.* at 4.)

## DISCUSSION

### I. LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). The elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d. 1127, 1131 (9th Cir. 2011) ("For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."). "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The standard for granting a TRO is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (simplified); *see also Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D.

PAGE 5 – FINDINGS AND RECOMMENDATION

Or. 2018) (noting that the "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction'" (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015))).

The Prison Litigation Reform Act ("PLRA") imposes additional restrictions on a court's ability to grant injunctive relief. Any such "(1) relief must be narrowly drawn, (2) extend no further than necessary to correct the harm the court finds requires preliminary relief, and (3) be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The PLRA requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.*

Finally, a plaintiff's motion for equitable relief must relate to the claims in his operative complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015) ("The district court properly ruled that [the plaintiff's] motion for injunctive relief was unrelated to its underlying complaint. [The plaintiff] cannot seek interim equitable relief of a nature it is not seeking in the final adjudication of its lawsuit."). The relationship with the operative complaint is sufficient if the temporary relief sought "would grant 'relief of the same character as that which may be granted finally.'" *Id.* at 636 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). While new allegations of misconduct may support additional claims against a defendant, "they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Id.* Absent this relationship or nexus, the Court "lacks authority to grant the relief requested." *Id.*

///

///

PAGE 6 – FINDINGS AND RECOMMENDATION

## II.  ANALYSIS

### A.  Motion for Temporary Restraining Order

In his motion for a temporary restraining order, Randall asks the Court to enjoin Defendant Dieter and all other ODOC officials from requiring Randall to submit to daily TB monitoring appointments. Although Defendants oppose the motion on several grounds, the Court need not address the party's arguments on the merits because Randall's request for a TRO is moot. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (explaining that a claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"); *see also Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin." (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995))).

As noted above, Randall released from prison in July 2025. An AIC's "release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (simplified). Because Randall has been released from custody, he is no longer subject to ODOC's TB screening policy, and the Court therefore recommends that the district judge deny Randall's TRO motion as moot. *See id.* (explaining that "[o]nce an [AIC] is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim" (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007))); *see also Underwood v. Cox*, No. 2:20-cv-01670-SB, 2021 WL 4953226, at *2 (D. Or. Oct. 24, 2021) (denying as moot the plaintiff's request for a TRO enjoining prison officials from delaying delivery of his legal mail because "he is no longer incarcerated and therefore no longer subject to [the prison]'s legal mail policies").

PAGE 7 – FINDINGS AND RECOMMENDATION

B.     **Motion for Preliminary Injunction**

Having been released from prison, Randall is now asking the Court to order the Board to exempt him from the electronic monitoring requirement outlined in the conditions of his post-prison supervision. (Mot. Prelim. Inj. at 1.) Randall insists that "a preliminary injunction is needed to preserve his rights during [this litigation]" because the Board's monitoring of his electronic devices gives the defense "a significant advantage" if the Board shares Randall's legal work with the ODOJ, which represents Defendant Dieter. (Randall Decl. ¶¶ 7-10.) Defendants respond that the Court should deny Randall's preliminary injunction motion because "[h]e has failed to show a connection" between the motion and his complaint, and "failed to satisfy the four-factor" preliminary injunction test. (Resp. Pl.'s Mot. Prelim. Inj. at 3-4.)

The Court agrees that the preliminary injunctive relief Randall seeks is unavailable because it is outside the scope of his complaint. *See Pac. Radiation Oncology*, 810 F.3d at 636 (explaining that there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself" and the relationship is sufficiently strong only where the injunction would provide "relief of the same character as that which may be granted finally") (simplified). Because the claims raised in Randall's complaint (which concern the conditions of Randall's confinement in ODOC facilities) lack an adequate relationship or nexus to those in the instant motion for preliminary injunction (which concern the Board's imposition of certain post-prison supervision requirements), "the district court lacks authority to grant the relief requested." *Id.*; *see also Flores v. ODOC*, No. 2:22-cv-01399-SB, 2023 WL 2136805, at *3 (D. Or. Feb. 21, 2023) ("The Court therefore lacks authority to grant preliminary injunctive relief because the relief [the plaintiff] now seeks is not sufficiently related to the claims or remedies in his operative complaint, and the Court denies [the plaintiff's] motion.") (citations omitted); *Smith v. Gaulding*, No. 2:19-09174 SVW (ADS),

PAGE 8 – FINDINGS AND RECOMMENDATION

2021 WL 8844647, at *2 (C.D. Cal. Dec. 16, 2021) (denying the AIC's motion for a preliminary injunction because "the Court lacks authority to grant the preliminary injunction because it has no relationship or nexus to the claims or remedies sought in the [operative complaint]") (citations omitted).

      Even if the Court could construe the allegations in Randall's request for preliminary injunction as sufficiently related to the allegations in the complaint, however, Randall provides no facts demonstrating that he is likely to succeed on the merits of this action, that he will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Although Randall concludes, without any factual support, that the Board will "likely" share information with the ODOJ, defense counsel attests that he is "not aware of any practice whereby [the Board] provides the ODOJ with the results of electronic monitoring of individuals on post-prison supervision for use in civil matters unrelated to the crimes those individuals have committed." (Decl. Carter Brace ¶ 5, ECF No. 52.) Indeed, defense counsel is unaware of any instances where the Board shared electronic monitoring information with the ODOJ in a civil action. (*Id.* ¶ 6.) Further, the public interest strongly favors maintaining electronic monitoring as a condition of Randall's post-prison supervision given his history of utilizing electronic devices to commit sex crimes and his classification as a high-risk sex offender. The Court recommends that the district judge deny Randall's request for preliminary injunctive relief.

///

///

///

///

PAGE 9 – FINDINGS AND RECOMMENDATION

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY Randall's motion for a temporary restraining order (ECF No. 10) and motion for a preliminary injunction (ECF No. 40).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this 18th day of November, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge